1    **ROBERT C. MADDOX & ASSOCIATES**
     Robert Maddox, Nevada Bar #4002
2    Troy Isaacson, Nevada Bar #6690
     3811 W. Charleston Blvd., Suite 110
3    Las Vegas, Nevada 89102
     Telephone: (702) 366-1900
4    Fax: (702) 366-1999
     rmaddox@maddoxandassociates.com
5    tisaacson@maddoxandassociates.com

6    **TIFFANY & BOSCO, P.A.**
     Richard G. Himelrick, Arizona Bar #004738
7    Third Floor Camelback Esplanade II
     2525 East Camelback Road
8    Phoenix, Arizona 85016-4237
     Telephone: (602) 255-6000
9    Fax: (602) 255-0103
     rgh@tblaw.com
10   *Admitted Pro Hac Vice*

11   **BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
     Andrew S. Friedman, Arizona Bar #005425
12   Francis J. Balint, Jr., Arizona Bar #007669
     2901 North Central Ave., Suite 1000
13   Phoenix, Arizona 85012
     Telephone: (602) 274-1100
14   Fax: (602) 274-1199
     afriedman@bffb.com; fbalint@bffb.com
15   *Admitted Pro Hac Vice*

16   Attorneys for Plaintiffs and the Prospective Class

17          **UNITED STATES DISTRICT COURT**

18             **DISTRICT OF NEVADA**

| | |
|---|---|
| 19   STEVEN KLEIN, WILLIAM J. BROOKSBANK, DONAVON JOHNSON, KEVIN BURK, JACK WHISTLER, and JOSEPH F. MANNIX, individually and on behalf of all others similarly situated, | Case No. 2:08-cv-1369 |
| | **Plaintiffs' Preliminary Opposition to Motion to Dismiss for Lack of Personal Jurisdiction** |
|          Plaintiffs, | - and - |
|          vs. | **Motion to Conduct Jurisdictional Discovery** |
| FREEDOM STRATEGIC PARTNERS, LLC, JOVAN VERCEL, JR., KENNETH M. WIDNER, FREEDOM WIRELESS, INC., DOUGLAS V. FOUGNIES, and LARRY L. DAY, | |
|          Defendants. | |
| And Counterclaim. | |

I. **Introduction.**

For the reasons that follow, this Court may exercise personal jurisdiction over Defendants Douglas V. Fougnies ("Fougnies"), Larry L. Day ("Day"), Jovan Vercel, Jr. ("Vercel") and Kenneth M. Widner ("Widner") (collectively, the "Individual Defendants") with confidence that doing so comports with "fair play and substantial justice" under *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). Alternatively, if the information provided below is not sufficient to establish jurisdiction, Plaintiffs request leave to proceed with jurisdictional discovery as described in Part IV and Exhibits A and B. Plaintiffs conferred with Defendants in good faith about jurisdictional discovery. Defendants agreed to consider some document production but refused to allow depositions of the Individual Defendants that would be needed to explain the documents. Moreover, Defendant Freedom Strategic Partners, LLC ignored a presuit request for inspection of records. *See* Exhibit C (letter requesting inspection). The request was made on behalf of Plaintiffs as investor-partners in partnerships managed by Freedom Strategic. *See id.*

II. **Factual Summary.**

The Individual Defendants, through a Nevada limited liability company ("Freedom Strategic") and a series of 24 or more Nevada partnerships ("the Nevada Partnerships"), raised over $9 million dollars from investors in Nevada and elsewhere. Complaint ¶ 2. This investor money was then used to litigate patent rights ("Patent 067") held by Freedom Strategic's parent company, a Nevada corporation named Freedom Wireless, Inc. ("Freedom Wireless"). *Id.* Investors were entitled to share in the litigation recoveries, which in one case alone resulted in an $87 million settlement. *Id.* ¶ 3.

Plaintiffs invested in one or more of the Nevada Partnerships created by the four Individual Defendants to enforce Patent 067. Plaintiffs' investments were solicited through a Business Plan, Ex. D, that was incorporated into each Partnership Agreement. *See, e.g.,* Exhibit E, at XI

(Partnership Agreement incorporating the Business Plan). The Business Plan explains that Freedom Strategic and Freedom Wireless had entered into an agreement "to form and manage the partnerships and take full responsibility for their organization and management." Business Plan, Ex. D, at 7; *see also* Ex. F (Royalty Participation Rights Agreement between Freedom Wireless and Freedom Strategic). Other promotional documents sent to Plaintiffs to solicit their investments touted the business background and accomplishments of Defendants Fougnies and Day and identified these two men as the Chairman and CEO (Fougnies) and the President (Day) of Freedom Wireless. *See* General Business Plan, Ex. G, at DLJ0410 (management summary). Other documents included solicitation letters by Fougnies to investors that enclosed biographical materials on himself and Day. *See, e.g.,* Ex. H (solicitation letter from Fougnies to investor Don Berry with biographical materials on Fougnies and Day). Vercel and Widner, as the managers of Freedom Strategic, worked jointly with Fougnies and Day to solicit investors. *See, e.g.,* correspondence from Vercel and Widner to Plaintiff Klein attached to his affidavit at Ex. I.

In sum, the four Individual Defendants jointly solicited the investments that are the subject of this action and jointly implemented the Business Plan under which the Nevada Partnerships were formed and afterwards managed. The Business Plan promised investors a share of the Patent 067 recoveries. *See* Ex. D, at 4. But despite multiple settlements including one for $87 million, the investors have so far received only small payments that are millions less than the $87 million settlement alone would suggest they are entitled to receive. *See* Complaint ¶¶ 49-90, 115. Defendants refuse to provide an accounting to explain their distributions. *See* Complaint ¶¶ 118-22, 129-30. As investor protests over the lack of information increased, the Individual Defendants instead conducted a meeting in Las Vegas on November 26, 2007, at which they solicited the investors' agreement to amendments to reduce investor interests in existing recoveries. In return, the term of the investment agreements is to be extended and investors are to receive an unquantified

interest in other unidentified patents besides Patent 067. *See* Declaration of Donovan Johnson, Ex. J (Johnson Decl.); Exs. K (Notice of Joint Meeting) and L (Joint Proxy Statement regarding the amendments). No information on the value of these unidentified patents was provided. *See* Complaint ¶¶ 107(c) & 111. Notably, investors were told that their votes didn't matter because Defendants already had the votes to pass the amendments. *See* Johnson Decl., Ex. J, ¶ 7.

Because Defendants refused to provide an accounting or fairly explain the new financial terms forced upon them at the Nevada meeting, Plaintiffs brought this action on behalf of the investors. The action asserts among other things that the four Individual Defendants and the Nevada entities they control breached fiduciary duties of full disclosure, loyalty, care, and fairness. Complaint ¶¶ 153-62. "A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 734 (9th Cir. 1999) (corporate officers cannot "hide behind the corporation where [the officer was] an actual participant in the tort"). Many of these fiduciary violations occurred in connection with the proxy solicitation and meeting held in Las Vegas, which was personally conducted by Vercel and Widner. *See, e.g.,* Complaint ¶ 160(b)-(g) and Johnson Decl., Ex. J.

As explained below and in the accompanying exhibits and declarations, the four Individual Defendants purposely availed themselves of the benefits of Nevada law by forming a Nevada corporation (Freedom Wireless), a Nevada LLC (Freedom Strategic), and at least twenty-four Nevada partnerships that jointly solicited money under partnership agreements that themselves require (a) application of Nevada law and (b) that the Plaintiffs enforce their partnership rights in Nevada. Simply stated, the Individual Defendants purposely selected Nevada law and a Nevada forum to decide disputes under the partnerships they created and from which they profited. Plaintiffs' claims arise directly out of fiduciary and contractual rights under the Nevada-governed

partnerships that Defendants created and solicited Plaintiffs to invest in. In other words, the Individual Defendants packaged and sold Nevada-governed investment contracts that were controlled and managed by Nevada issuers. Plaintiffs' fiduciary rights arise out of these Nevada-issued investment contracts. And Plaintiffs' claims arise directly out of the Individual Defendants' breach of Plaintiffs' Nevada-governed fiduciary rights.

Moreover, the Individual Defendants engaged in a continuous series of purposeful contacts with Nevada. Defendants Vercel and Widner—who had primary responsibility to raise capital from investors, oversee partnership affairs, and communicate with the investors—systematically interacted with Nevada residents including Plaintiff Steven Klein. Beginning in at least 1999, and continuing until today, Vercel and Widner personally solicited funds from Nevada residents in telephone calls and written solicitations sent to investors in Nevada. *See* Declaration of Steven Klein ("Klein Decl."), Ex. I, ¶¶ 4, 5 and 7. Vercel and Widner solicited and collected a constant flow of funds from investors in Nevada. *Id.*, ¶ 4. Likewise, Vercel signed distribution checks that were mailed to investors in Nevada. *Id.*, ¶ 10. Vercel and Widner also sent Nevada residents periodic written communications, signed by both of them, concerning partnership affairs and the progress of the ongoing patent litigation. *Id.*, ¶ 6. For example, from February 2000 through July 2007, Klein received no less than 31 such communications signed by Vercel and Widner and transmitted to Klein's address in Nevada. *Id.*, ¶ 6.

Like the original partnership agreements, section 13.9 of the Amended and Restated Partnership Agreement that was the subject of the November 2007 Las Vegas meeting selected Nevada law for partnership governance and made Clark County, Nevada the sole venue to enforce partnership rights. *See* Ex. M, at C-16 § 13.9 (Amended and Restated Partnership Agreement). The Individual Defendants also purposefully chose Nevada as the site for the pivotal special meeting of partners at which resolutions were adopted to rewrite the Partnership Agreements and effectuate the

1  scheme that is at the center of this litigation.

2  Vercel and Widner presided over this partnership meeting in Las Vegas on November 26,

3  2007. Johnson Decl., Ex. J, ¶ 7. At that meeting, Vercel recommended that the attending partners

4  vote in favor of proposed partnership amendments that had the effect of dramatically reducing the

5  partners' share of patent royalty payments. *Id.* Vercel informed the partners that their vote really

6  did not matter because the Individual Defendants already had collected enough votes to pass the

7  proposed amendments. *Id.*

8

9  When Plaintiff Johnson attempted to ask questions to obtain information needed to make an

10  informed decision on the proposed amendments, Vercel refused to acknowledge him. *Id.*, ¶ 8. When

11  Johnson persisted in his effort to simply ask questions about the proposed amendments, he was

12  approached by bouncers and threatened with eviction from the meeting. *Id.* The special meeting of

13  shareholders, which was the culmination of the Individual Defendants' efforts to dilute the investors'

14  interest in royalty payments, was noticed to take place in Nevada, conducted in Nevada, and

15  overseen in Nevada by Vercel and Widner.

16

17  Despite their deliberate selection of Nevada law and a Nevada forum for their business

18  enterprise, the Individual Defendants now insist that it is unfair to require them to defend in a

19  Nevada courtroom the fairness of their decisions as fiduciaries who controlled and managed the

20  Plaintiffs' investments. To that end, even though they are each alleged to have been personally

21  involved in the wrongdoing, the Individual Defendants have filed a motion to dismiss for lack of

22  personal jurisdiction. *See* Defendants Jovan Vercel, Jr., Kenneth M. Widner, Douglas v. Fougnies,

23  and Larry L. Day's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. #10] ("D. Memo").

24  The Individual Defendants contend this Court lacks specific jurisdiction over them because they live

25  in Arizona and supposedly visit Las Vegas only occasionally for pleasure. They also claim that they

26  need not answer for their actions in Nevada under the so-called "fiduciary-shield doctrine."

27

28

As shown below, these contentions are inconsistent with the constitutional reach of Nevada's long-arm statute and are based upon an outdated interpretation of the fiduciary-shield doctrine that has been rejected by the Ninth Circuit. Plaintiffs believe the supporting testimony in their declarations and exhibits conclusively refutes Defendants' jurisdictional arguments. But at a minimum, Plaintiffs have established a *prima facie* case that, as further explained in Part IV, entitles Plaintiffs to proceed with jurisdictional discovery to the extent the Court has any doubts regarding personal jurisdiction over the Individual Defendants.

### III. The standard on a motion to dismiss for lack of personal jurisdiction.

On a Rule 12(b)(2) motion to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over each defendant. *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir. 2006). In the absence of an evidentiary hearing, the plaintiff can rely on a *prima facie* showing of personal jurisdiction to defeat the 12(b)(2) motion to dismiss. *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995). To make a *prima facie* showing of jurisdiction, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Id.* The plaintiffs allegations "may not be merely conclusory, but must set forth specific facts connecting the defendants with the forum." *Pocahontas First Corp. v. Venture Planning Group, Inc.,* 572 F. Supp. 503, 506 (D. Nev.1983). Moreover, a court resolves conflicts in the parties' affidavits in favor of the non-moving party. *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.,* 485 F.3d 450, 457 n.5 (9th Cir. 2007).

### III. Legal Argument.

#### A. Nevada's long-arm statute extends to the outer reaches of due process.

The Individual Defendants concede that the Nevada long-arm statute extends personal jurisdiction to the "outer reaches" of due process under the United States Constitution. D. Memo, at 2:4-8; *see* Nev. Rev. Stat. § 14.065(1); *Baker v. Eighth Judicial Dist. Court,* 116 Nev. 527, 531, 999

P.2d 1020, 1023 (Nev. 2000) ("Nevada's long-arm statute . . . reaches the limits of due process set by the United States Constitution."). Therefore, the statutory and constitutional standards merge into the single due process test established in *International Shoe. Davis v. Metro Productions*, 885 F.2d 515, 520 (9th Cir. 1989); *Harris Rutsky & Co. Serv., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). Due process requires "that in order to subject a defendant to a judgment *in personam*, if he not be present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316; *Harris*, 328 F.3d at 1129 (quoting same).

### B. The fiduciary-shield doctrine is inapplicable.

Defendants rely upon the fiduciary-shield doctrine. This doctrine provides that "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis*, 885 F.2d at 520 (citation omitted). But Defendants neglect to advise the Court that in *Davis* the Ninth Circuit "considered and rejected [that doctrine] in the personal jurisdiction context." *Schenck v. Motorcycle Accessory Warehouse, Inc.*, 2007 WL 1138915, at * 6 (D. Idaho April 17, 2007) (citing *Davis*, 885 F.2d at 520-23). Specifically, in *Davis* the Ninth Circuit held:

> Accordingly, we conclude that because the Arizona long-arm statute extends to the limit of constitutional due process, and because it is not equitably limited by the fiduciary shield doctrine, the reach of long-arm jurisdiction in Arizona is effectively stretched by the reasoning of *Calder* and *Keeton*. Thus, Arizona's long-arm statute may, consistent with constitutional due process, allow assertion of personal jurisdiction over officers of a corporation as long as the court finds those officers to have sufficient minimum contacts with Arizona.

*Davis*, 885 F.2d at 522 (citations omitted).

Accordingly, in Nevada, and other Ninth Circuit states where "the state's long-arm statute allows jurisdiction to the extent allowed by the Constitution, [] employing the fiduciary shield to insulate employees is inconsistent with the wide reach of the statute." *Brink v. First Credit Res.*, 57

F. Supp. 2d 848, 859 (D. Ariz. 1999) (citing *Davis,* 885 F.2d at 522); *accord, Schenck*, 2007 WL 1138915, at *6 (citing *Davis* and *Brink*); *Garrison v. Bally Total Fitness Holding Corp.,* 2005 WL 3143105, at *2 (D. Or. Nov. 23, 2005) ("When a state's long arm statute extends to what is allowed by the constitutional due process requirements, … there is no fiduciary shield protection and the court may assert personal jurisdiction over the individuals.") (citing *Davis*); *Kubley v. Whetstone*, 2004 WL 2827716, at *6 (D. Alaska Dec. 3, 2004) (explaining that "the 'fiduciary shield doctrine' is not one of constitutional dimension") (citing *Davis*). Notably, the fiduciary-shield doctrine cases relied on by the Individual Defendants in Section B of their Motion all ***pre-date*** *Davis*.[1]

Accordingly, the jurisdictional question, when properly stated, is whether this Court's exercise of jurisdiction over the Individual Defendants "accords with 'traditional notions of fair play and substantial justice' embodied in the Due Process clause of the Fourteenth Amendment and ***not*** whether the fiduciary shield doctrine bars jurisdiction." *Brink,* 57 F. Supp. 2d at 860 (D. Ariz. 1999) (emphasis added); *accord Cummings v. Western Trial Lawyers Ass'n*, 133 F. Supp. 2d 1144, 1156 (D. Ariz. 2001).

Moreover, even if some vestige of the fiduciary-shield doctrine applied, the U.S. Supreme Court has made it clear that a corporate officer does not have a blanket exemption from personal jurisdiction simply because he claims his actions were taken on behalf of the corporation. *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 n.13 (1984) (rejecting "the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity"). Rather, "[e]ach defendant's contact with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984).

---

[1]  *See* D. Memo, at 5:16 – 6:19 (citing *Videotronics, Inc. v. Bend Elec.*, 564 F. Supp. 1471 (D. Nev. 1983); *Pocahontas First Corp. v. Venture Planning Group, Inc.*, 572 F. Supp. 503 (D. Nev. 1983); *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974) and *Idaho Potato Comm'n. v. Washington Potato Comm'n.,* 410 F. Supp. 171 (D. Idaho 1976)).

As a result, personal jurisdiction over a company official may be based upon "the individual's control of, and direct participation in the alleged activities" of the company. *Wolf Designs, Inc. v. DHR & Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004). The assertion of personal jurisdiction based on the primary-participant theory is appropriate where the individual had "control of, and direct participation in the alleged activities." *Id.* at 1072. The Ninth Circuit has noted with approval language in a First Circuit opinion explaining that "cases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct . . . or the 'central figure' in the challenged corporate activity.'" *Davis*, 885 F.2d at 524 n.10 (quoting *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 907 (1st Cir. 1980)). As explained previously in the Factual Summary, the four Individual Defendants were, under any reasonable view, the central, guiding figures behind the formation and operation of the Nevada Partnerships and the later fiduciary misconduct out of which Plaintiffs' claims arise.

C.     **The constitutional "minimum contacts" test is satisfied for each of the Individual Defendants.**

As the Individual Defendants correctly point out, specific jurisdiction over a non-resident defendant is determined by a three-pronged test:

> (1)  the non-resident must perform some act or consummate some transaction which purposefully avails him of the privilege of conducting activities in the forum so as to invoke the benefits and protections of the state's laws;
>
> (2)  the cause of action must arise out of or relate to the defendant's forum-related activities; and
>
> (3)  the exercise of jurisdiction by the court must be reasonable.

*Davis*, 885 F.2d at 520; *see generally, Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (explaining that these requirements protect non-residents from being sued in foreign courts as a result of "random, fortuitous or attenuated contacts" over which they had no control). "The plaintiff

bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). After that, the burden shifts to the defendant to show that exercising jurisdiction would not be reasonable. *Id.*

As shown below, even at this preliminary stage, the facts show that all four of the Individual Defendants have sufficient contacts with Nevada to support personal jurisdiction.

### 1.  Purposeful availment.

The purposeful availment analysis "turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986). The requirement is met if the defendant "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Harris*, 328 F.3d at 1130 (quoting *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)). In particular, "the solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988). Likewise, contract negotiations followed by contract formation in the forum state invoke the forum state's benefits and protections and favor a finding of purposeful availment. *See Data Disc, Inc., v. Sys. Tech. Ass'n, Inc.*, 557 F.2d 1280, 1287-88 (9th Cir. 1977). Physical conduct within the forum state is not needed. *Harris*, 328 F.3d at 1130. Indeed, "the purposeful availment test may also be satisfied if the defendant intentionally directed his activities into the forum state." *Harris*, 328 F.3d at 1131 (citing *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir. 1989)).

Here, Freedom Strategic is wholly owned by Freedom Wireless. *See* Complaint ¶ 12. Both companies were formed under Nevada law. Their business is jointly conducted under an agreement that provides for the formation of the Nevada Partnerships in which Plaintiffs invested. *See* Ex. F (Royalty Participation Rights Agreement between Freedom Wireless and Freedom Strategic) and Ex.

11

D (Business Plan). Vercel and Widner are the two managing agents of Freedom Strategic. By statute (N.R.S. § 86-263(1)(d)) their "residence or business" address must be disclosed to the Nevada Secretary of State. Vercel and Widner use a Nevada post-office address as their "residence or business" address in the required documents. *See* Ex. N at 1. Fougnies is the Chairman of the Board and CEO of Freedom Wireless; Day is the President of Freedom Wireless. *See* Ex. G at DLJ0410.[2] Once again, Nevada law requires disclosure of these corporate officers' "residence or business" address. *See* N.R.S. § 78.150(1)(d). Fougnies and Day both use a Nevada post-office address as their "residence or business" address in documents filed with the State of Nevada. *See* Ex. O at 1. Whether viewed as admissions or statements that Defendants are equitably estopped to deny, these statements in mandatory public filings concerning the Individual Defendants' Nevada addresses should be deemed conclusive of "purposeful availment." The Individual Defendants should not be allowed to take one position with the State of Nevada and a contrary position in private litigation. *See Day v. Davis*, 47 A.D.3d 750, 850 N.Y.S.2d 189, 190 (N.Y. App. Div. 2008) (holding that attorney was estopped from denying validity of business address where attorney listed the same as his address with the Office of Court Administration); *Deas v. Brunke*, 199 A.D.2d 43, 44, 604 N.Y.S.2d 569, 570 (N.Y. App. Div. 1993) (holding that defendant was estopped from contesting the validity of her place of residence where such was listed with the state and was required to be updated within 10 days of any change); *Melton v. Brotman Foot Care Group*, 198 A.D.2d 481, 482, 604 N.Y.S.2d 203, 205 (N.Y. App. Div. 1993) (holding that professional was estopped from denying validity of address provided to state division of licensing).

Furthermore, the General Business Plan, a copy of which is attached as Exhibit G, shows on page 7 that the Individual Defendants set up Freedom Wireless and Freedom Strategic to form a

---

[2] Fougnies and Day are alleged to personally control not only the two Nevada companies and the Nevada Partnerships, but Vercel and Widner as well. Complaint ¶¶ 18, 132.

group of general partnerships that would raise the needed money. Not only is Freedom Wireless a Nevada corporation set up by Fougnies and Day, and Freedom Strategic a Nevada LLC for which the managing agents are Vercel and Widner, but all *twenty-four* partnerships used to raise the money were organized under Nevada law, list Las Vegas as their place of business, and have Freedom Strategic as their managing partner. *See, e.g.,* Ex. E (example of the partnership agreements). The Business Plan itself shows a Las Vegas address. *See* Ex. G, at 1.

In short, the Individual Defendants formed and are profiting from a 26-entity business operation with a Nevada structure. Not only did the governing formation documents originate in Nevada—and by Nevada law must be maintained in the state[3]—but the partnership agreements from which Plaintiffs' fiduciary and contractual rights arise require that disputes be adjudicated in Nevada. For example, page 10 of the original, pre-amendment partnership agreements, provides for application of Nevada law and states that to the extent permissible the sole venue for suits to enforce the agreement shall be Las Vegas, Nevada. *See* Ex. E, at X. Similarly, section 13.9 of the Amended and Restated Partnership Agreement, Ex. M, on which the Individual Defendants solicited votes at the November 2007 Nevada meeting, requires all suits to be filed in Clark County, Nevada. Plainly, the Individual Defendants were using Nevada as their base of business, and they themselves expected any suits regarding partnership issues to be filed in Nevada.

The Individual Defendants' argument that they did not purposefully avail themselves of the privilege of conducting business in Nevada is impossible to accept, given that they undisputedly formed and operated in Nevada the entire business enterprise at the heart of this lawsuit. Unquestionably, the Individual Defendants availed themselves of the Nevada corporation code and the protections of its limited liability provisions. Besides that, their lack-of-jurisdiction argument is

---

[3] *See* N.R.S. 86.241 (requiring certain LLC records to be kept in Nevada); N.R.S. 78.105 (requiring the same for corporations).

based on the erroneous contention that the fiduciary-shield doctrine renders "irrelevant" all of these actions admittedly taken as employees and representatives of the Nevada companies and partnerships. D. Memo, at 4. It is their own alleged wrongdoing, not their mere status as corporate officers or managing agents, that forms the basis of the Nevada-law breach of fiduciary duty claims alleged against them. *See, e.g., Gen Ads, LLC v. Briebart*, 435 F. Supp. 2d 1116, 1122-23 (W.D. Wash. 2006) (exercising jurisdiction over nonresident corporate officer who allegedly breached fiduciary duties to the plaintiffs in connection with a Washington company, even though he had not visited Washington since he was a small boy).[4]

Finally, Freedom Strategic, through the decisions of its controlling managers, Vercel and Widner, who are themselves controlled by Fougnies and Day (Complaint ¶ 18), filed a counterclaim accusing Plaintiffs of improperly bringing suit. *See* Counterclaim [Dkt. 12-2]. By affirmatively using Freedom Strategic to attack Plaintiffs, Vercel and Widner are yet again using the benefits of Nevada law and Nevada courts. *See Taurus IP, LLC v. Daimlerchrysler Corp.*, 519 F. Supp. 2d 905, 922-23 (W.D. Wis. 2007) (holding that entity's manager purposefully availed himself of privilege of filing suit in forum state through entity he controlled and thus concluding that court had personal jurisdiction over manager in his individual capacity); *cf. Neuralstem, Inc. v. Stemcells, Inc.*, 573 F. Supp. 2d 888, 897 (D. Md. 2008) ("Many courts have concluded that personal jurisdiction may be based upon implied consent or waiver when a non-resident files a claim in the forum state that involves the same transaction."

---

[4] The present case is obviously a far cry from *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997), the only case cited in the Individual Defendants' "purposefully availed" analysis; there, the defendant who objected to jurisdiction in Arizona did nothing more than post an essentially passive home page on the internet in Florida, and no part of its business was sought or achieved in Arizona.

### 2.     Claims arising out of forum-related activities.

The Ninth Circuit applies a "but for" test to decide whether a particular claim arises from forum-related activities. *Harris,* 328 F.3d at 1131-32.  The Individual Defendants created a Nevada-governed, 26-entity business to finance enforcement of the Patent 067.  But for the solicitation of investments in this enterprise by investors like Plaintiffs, including Plaintiff Klein, a Nevada resident, Plaintiffs would have no claims for breach of fiduciary duties.  Nor can it be disputed that pivotal parts of Plaintiffs' fiduciary-duty claims arise out of the proxy solicitation through which the Individual Defendants' attempted to coerce investors into supporting the rewritten partnership agreement during the meeting held in Las Vegas. *See* Complaint ¶¶ 160(b)-(g), 161-62 (alleging that Defendants' conduct in attempting to rewrite the partnership agreement violates fiduciary fairness).  Simply stated, but for Defendants' conduct in forming and soliciting money for the Nevada Partnerships that they controlled, and then breaching their fiduciary duties under those Partnerships, Plaintiffs' claims would not exist.

### 3.     It is not unreasonable for the Individual Defendants to answer in a Nevada court.

The Individual Defendants themselves conceived the idea of creating Nevada partnerships, and raising money through them. This is not a case in which the Plaintiffs are attempting to hale remotely involved officers or directors of a company into a distant forum.  Quite the contrary; it is a case involving a four-man operation in which the Individual Defendants made the choice to invoke Nevada law and compel their investor partners to litigate in Nevada.  And it is a case in which Plaintiffs' claims arise directly out of the fiduciary rights the Individual Defendants created when they formed the Nevada Partnerships and sold investment contracts through them.  Under any reasonable view, the Individual Defendants had to foresee that allegations of fiduciary misconduct involving the Nevada companies they created and managed would lead to suits against them in Nevada.

Once it has been decided that a defendant purposefully established minimum contacts with a forum, "'he must present a *compelling* case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction." *Harris*, 328 F.3d at 1132 (emphasis added) (quoting *Burger King*, 471 U.S. at 477). Assessing the reasonableness of asserting jurisdiction prevents the use of jurisdictional rules in such a way as to make litigation "'so gravely difficult and inconvenient' that a party is at a 'severe disadvantage in comparison to his opponent.'" *Burger King*, 471 U.S. at 478.

None of the Individual Defendants have met their burden with the conclusory denials in their affidavits, especially when they simultaneously acknowledge in their moving papers "contacts with the state ... rooted in their positions as employees and/or representatives" of the Nevada entities. D. Memo, at 5:4-6.[5] The Individual Defendants in particular do not even mention the seven factors considered by the Ninth Circuit to determine whether the defendant has met its burden of establishing a "compelling case" that the exercise of jurisdiction would be unreasonable under the circumstances. *See, e.g., Harris*, 328 F.3d at 1132-34 (listing and applying those factors); *see, e.g., Gen Ads*, 435 F. Supp. 2d at 1123 (defendant who failed to address the seven pertinent factors did not meet burden to establish unreasonableness).

In any event, exercising personal jurisdiction here over the Individual Defendants who used Nevada companies to raise money in Nevada and elsewhere can hardly be said to offend traditional notions of fair play and substantial justice. Indeed, one would be hard-pressed to wonder how, given

---

[5] Particularly unpersuasive is the Individual Defendants' "slippery slope" argument that exercising personal jurisdiction over them in this case would somehow make "every attorney or employee of any partnership or corporation ... subject to the jurisdiction of any state in which that attorney or employee acted solely on the behalf of the partnership or corporation." D. Memo, at 5:6-10. The check against this slippery-slope, of course, is the due process limitation of *International Shoe*. And not every attorney and employee would have personally participated in the fiduciary misconduct, as did the Individual Defendants.

existing case law, the Individual Defendants could *not* reasonably expect to be made to answer to investors in a Nevada forum.

Excellent general guidance is provided by *Davis*. There, the Ninth Circuit found personal jurisdiction over two defendants who each owned 50% of the company's shares and who purposefully directed their activities toward the forum when the entity they controlled did business in the forum. 885 F.3d at 520-23. Just as in *Davis*, here joint and several liability in Nevada of corporate officers for corporate misconduct would have been readily foreseeable; indeed, by making Nevada law controlling on actions to enforce the agreement, the Individual Defendants were on notice that they could be held accountable under Nevada fiduciary law.

Also analogous is *MacPherson v. Taglione*, 158 Ariz. 309, 762 P.2d 596 (Ct. App. 1988), which the Ninth Circuit discussed at length in *Davis*. Macpherson, a resident of Arizona, had been sold rare coins by a Massachusetts corporation. MacPherson had been contacted by telephone in Arizona by an agent of the corporation, but she actually bought the coins while vacationing in Michigan. When the coins proved inauthentic, the president of the corporation, Taglione, was named as a defendant in an action brought in Arizona. The trial court dismissed claims directed against Taglione for lack of personal jurisdiction. The court of appeals reversed, stating, "[t]he question is whether the court's exercise of long arm jurisdiction offends 'traditional notions of fair play and substantial justice' embodied in the due process clause of the Fourteenth Amendment." *MacPherson*, 762 P.2d at 599. The court noted the fact that the corporation conducted business nationwide and had solicited MacPherson's purchases in Arizona. It also found important the fact that Taglione was president of the corporation and had purposely directed his activities at residents of Arizona. As a result, the court rejected Taglione's argument that jurisdiction should not be exercised over him because he was only an employee of the corporation, and concluded that MacPherson had made a *prima facie* case that Taglione was subject to Arizona's jurisdiction.

In summary, if personal jurisdiction was reasonable and thus constitutionally permissible in *Davis* and *MacPherson*, it is unquestionably reasonable and permissible over the Individual Defendants here.

## IV. If needed, Plaintiffs are entitled to jurisdictional discovery.

Parties should not be forced to litigate in the dark. This is particularly true when jurisdictional issues are raised by a defendant through a motion to dismiss. At the pre-discovery stage, parties often lack information that they need to substantiate their jurisdictional claims. As shown by the footnoted cases, the Ninth Circuit[6] and other circuits[7] recognize that jurisdictional discovery should be permitted when a plaintiff is placed in this position. If it was otherwise, a defendant could "defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996). To avoid this inequity, courts should "assist the plaintiff by allowing jurisdictional discovery."[8] *See, e.g.,* *McMullen v. European Adoption Consultants, Inc.*, 109 F. Supp. 2d 417, 419 (W.D. Pa. 2000) (explaining that "[p]laintiffs are generally permitted to conduct limited discovery relevant to the

---

[6] *See Harris*, 328 F.3d at 1135 (holding that district court abused its discretion in refusing to allow jurisdictional discovery); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 & n.24 (9th Cir. 1977) (remanding for jurisdictional discovery and explaining that "it is clear that a court may allow discovery to aid in determining whether it has in personam or subject matter jurisdiction."); *cf. Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) (acknowledging district court's allowance of jurisdictional discovery).

[7] *See, e.g., Lakin v. Prudential Sec., Inc.*, 348 F.3d 704 (8th Cir. 2003) (holding that district court abused its discretion in not permitting jurisdictional discovery and remanding for the same); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455-58 (3d Cir. 2003) (finding error in district court's failure to permit jurisdictional discovery and remanding for the same); *see also Intelsat Global Sales and Mktg., Ltd. v. Comty. of Yugoslav Posts Teles. and Teles.*, 534 F. Supp. 2d 32, 34-36 (D.D.C. 2008) (permitting jurisdictional discovery and explaining that district courts "must give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction."); *Principal Fin. Servs., Inc. v. Big Fin. and Ins. Servs., Inc.*, 426 F. Supp. 2d 976, 981-82 (S.D. Iowa 2006) (permitting jurisdictional discovery and acknowledging its necessity where jurisdictional information is uniquely in the hands of the objecting defendant).

[8] *Toys "R" Us, Inc.*, 318 F.3d at 455-58.

1  question of personal jurisdiction."); *Goehring v. Superior Court*, 62 Cal. App. 4th 894, 73 Cal. Rptr.

2  2d 105 (1999) (refusing to apply the fiduciary-shield doctrine to certain principals and remanding for

3  an opportunity to conduct jurisdictional discovery); *G&G LLC v. White*, 535 F. Supp. 2d 452, 463-

4  66 & n.26 (D. Del. 2008) (concluding that additional jurisdictional discovery was needed relative to

5  officers and directors).

6

7       Plaintiffs therefore request leave to depose the four Individual Defendants on jurisdictional

8  issues including those listed in Exhibit A. Plaintiffs also request production of the documents listed

9  in Exhibit B before Defendants' jurisdictional depositions.

10  **V.    Conclusion.**

11      The Individual Defendants, as the operators of the Nevada companies and the Nevada

12  Partnerships—and as the guiding spirits behind the alleged breaches of fiduciary duties in connection

13  with those entities—have extensive direct, personal contacts with the State of Nevada. They not only

14  acted in Nevada, and used Nevada addresses in their company filings, but the actions they took

15  elsewhere where aimed at investors in Nevada, like Plaintiff Klein, and could be expected to cause

16

17  harm in Nevada. And they themselves called for the application of Nevada law through a Nevada

18  forum in the partnership documents. Surely it cannot be said that the Individual Defendants are

19  being sued in a foreign court as a result of "random, fortuitous or attenuated contacts" over which

20  they had no control.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

1        Accordingly, the Individual Defendants' Motion to Dismiss should be denied.  Alternatively,

2  briefing on the Motion to Dismiss should be stayed pending completion of jurisdictional discovery.

3       Dated:  November _10th_, 2008.

4

5                 **ROBERT C. MADDOX & ASSOCIATES**

6

7                 By: _____

8                 Robert Maddox, Nevada Bar #4002
                    Troy Isaacson, Nevada Bar #6690

9                 3811 W. Charleston Blvd., Suite 110
                    Las Vegas, Nevada 89102

10               Telephone: (702) 366-1900
                    Fax: (702) 366-1999

11               **TIFFANY & BOSCO, P.A.**

12               Richard G. Himelrick (#004738)
                    Third Floor Camelback Esplanade II

13               2525 East Camelback Road
                    Phoenix, Arizona 85016-4237

14               Telephone: (602) 255-6000
                    Fax: (602) 255-0103

15               **BONNETT, FAIRBOURN, FRIEDMAN**
                 **& BALINT, P.C.**

16               Andrew S. Friedman, Arizona Bar #005425
                    Francis J. Balint, Jr., Arizona Bar #007669

17               2901 North Central Ave., Suite 1000
                    Phoenix, Arizona 85012

18               Telephone: (602) 274-1100
                    Fax:  (602) 274-1199

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify on November 10, 2008, that the foregoing **PLAINTIFFS'**

**PRELIMINARY OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL**

**JURISDICTION –AND- MOTION TO CONDUCT JURISDICTIONAL DISCOVERY,**

was served via the United States District Court CM/ECF system on all parties or persons requesting

notice:

_____

An employee of Robert C. Maddox & Associates