UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEVEN KLEIN, WILLIAM J. BROOKSBANK, DONAVON JOHNSON, KEVIN BURK, JACK WHISLER, JOSEPH F. MANNIX, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FREEDOM STRATEGIC PARTNERS, LLC; FREEDOM WIRELESS, INC.; JOVAN VERCEL, JR.; KENNETH M. WIDNER; LARRY L. DAY; and DOUGLAS V. FOUGNIES,<br><br>Defendants.<br><br>AND ALL RELATED ACTIONS. | 2:08-CV-01369-PMP-PAL<br><br>O R D E R |

Presently before the Court is Defendants Jovan Vercel, Kenneth Widner, Douglas Fougnies, and Larry Day's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. #10), filed on October 17, 2008. Plaintiffs filed an Opposition (Doc. #31) on November 10, 2008, supported by an Errata (Doc. #32) and a Notice of Filing/Request for Judicial Notice (Doc. #37, #38). Defendants filed a Reply (Doc. #45) and an Opposition to the Notice of Filing/Request for Judicial Notice (Doc. #46) on November 24, 2008. Plaintiffs filed a Reply to the Notice of Filing/Request for Judicial Notice (Doc. #51) on December 5, 2008.

Also before the Court is Plaintiffs' Motion to Conduct Jurisdictional Discovery (Doc. #33), filed on November 12, 2008. Defendants did not file a separate document in

opposition but made opposing arguments in their Reply in Support of their Motion to Dismiss for Lack of Personal Jurisdiction (Doc. #45).

Also before the Court is Plaintiffs/Counter-Defendants' Motion to Dismiss Counterclaim (Doc. #36), filed on November 13, 2008. Defendant/Counter-Plaintiff Freedom Strategic Partners, LLC filed an Opposition and Motion for Leave to Amend (Doc. #49) on December 1, 2008. Plaintiffs/Counter-Defendants filed a Reply (Doc. #56) on December 15, 2008. The Court held a hearing on these matters on January 29, 2009.

## I. BACKGROUND

As alleged by Plaintiffs, Defendant Freedom Wireless, Inc. ("FWI"), a Nevada corporation, holds a patent for a technology that facilitates cell phone use through prepaid phone cards ("Patent 067"). (Notice of Removal (Doc. #1), Compl. ["Compl."] ¶¶ 1, 15.) Defendants Douglas Fougnies ("Fougnies") and Larry Day ("Day") controlled FWI during all relevant times through their positions as chairman/chief executive officer and president. (Id. ¶¶ 16-18.) Because FWI lacked the financial resources to enforce Patent 067, FWI formed Defendant Freedom Strategic Partners, LLC ("FSP"), a Nevada limited liability company. (Id. ¶¶ 12, 25-26.) Defendants Jovan Vercel ("Vercel") and Kenneth Widner ("Widner") have been shareholders, as well as the two managers, of FSP during all relevant times. (Id. ¶¶ 13-14.)

On August 1, 1998, FWI and FSP entered into a ten-year royalty participation rights agreement ("Royalty Agreement"), in which FSP agreed to raise funds with which FWI could enforce Patent 067 and FWI agreed to pay FSP a percentage of royalties collected, as well as provide an annual accounting. (Id. ¶¶ 27, 30-31.) In the Royalty Agreement, FWI and FSP envisioned partnerships, each consisting of 500 units at a cost of $1,000 per unit, for administering royalties. (Id. ¶¶ 2, 32, 34.) FSP, principally through Vercel, solicited the named Plaintiffs and other investors (collectively the "Investor Partners") for the partnerships, ultimately raising $9,313,125 in twenty-five partnerships.

1    (Id. ¶¶ 33, 35.) Each partnership was governed by an identical partnership agreement (the
2    "Partnership Agreement"), which incorporated a business plan that estimated up to $5.318
3    billion in royalties, of which FSP allegedly would be entitled to $1.98 billion. (Id. ¶¶ 37-
4    40.) The Partnership Agreement also provided that FSP was the initial managing partner of
5    the partnerships. (Id. ¶ 46.)

6          Utilizing the Investor Partner funds, FWI litigated against alleged infringers of
7    Patent 067, entering into at least five licensing and three settlement agreements, one of
8    which was worth $87 million. (Id. ¶¶ 47-48, 77.) However, FWI allegedly refused to
9    disclose the full terms of the licensing and settlement agreements, as well as failed to pay
10   royalties to FSP or the partnerships. (Id. ¶¶ 50, 55, 61, 64, 69, 73, 81, 86-87, 92, 95.)
11   Further, FSP, Vercel, and Widner allegedly failed to enforce FSP's royalty rights. (Id.
12   ¶¶ 57, 65, 74, 82, 88, 96, 99.) FSP also failed to distribute royalties to the partnerships or
13   Investor Partners. (Id. ¶¶ 58-89, 66-67, 75-76, 83-84, 89-90, 97-98.) Although Vercel
14   wrote to the Investor Partners in 2007, promising an assessment of the settlement and
15   licensing agreements, Defendants never provided such information. (Id. ¶¶ 101, 104.)

16         In September 2007, FSP sent the Investor Partners a Notice of Joint Special
17   Meeting of Partners and a Joint Proxy Statement (collectively the "Notice/Proxy
18   Statement") for all of the partnerships, including proposed amended Royalty and
19   Partnership Agreements. (Id. ¶ 105). One proposed amendment was to reduce FSP's
20   royalties from 37.2525% to 10% retroactive to January 1, 2007, but extending the ending
21   date from 2008 to 2015 and adding four patents. (Id. ¶ 107.) The Notice/Proxy Statement
22   warned the Investor Partners that if they voted against the amendments but a majority of
23   units in their specific partnership voted in favor of the amendment, that Investor Partner
24   would receive no future payments. (Id. ¶ 114.)

25         However, the Notice/Proxy Statement failed to disclose information allowing the
26   Investor Partners to compare the old and new agreements. (Id. ¶¶ 110-11.) In October

2007, FSP sent the first royalty payments of $1,000 per unit to some of the Investor Partners. (Id. ¶ 115.) Although the Investor Partners continued to ask for information, Defendants allegedly continued refusing to disclose facts regarding the amendments, the settlements, the licensing agreements, and expected future income. (Id. ¶ 122.)

On November 26, 2007, approximately fifty Investor Partners attended the special meeting in Las Vegas. (Id. ¶ 123.) Vercel and Widner, along with a FSP attorney, conducted the meeting and recommended a vote in favor of the proposed amendments. (Id. ¶¶ 124-25.) However, they again refused to provide information as to the settlement and licensing agreements. (Id. ¶¶ 126, 128.) Subsequently, FSP claimed on its website that the amendments had been approved by all twenty-five partnerships. (Id. ¶ 127.) In July 2008, Plaintiffs' attorney sent a letter to FSP requesting access to the books and records of the partnerships; FSP failed to respond. (Id. ¶¶ 129-30, Ex. A.)

On August 29, 2008, Plaintiffs, on behalf of themselves and all similarly situated Investor Partners, filed a class action in Nevada state court against Vercel, Widner, Fougnies, Day (the "Individual Defendants"), FWI, and FSP. (Notice of Removal.) Defendants removed to this Court on October 10, 2008. (Id.) Plaintiffs allege claims for breach of fiduciary duty against all Defendants (count 1); aiding, abetting, and/or participating in breaches of fiduciary duties against FWI, Fougnies, and Day (count 2); breach of the Partnership Agreement against all Defendants (count 3); and breach of the amended Partnership Agreement against all Defendants (count 4). (Compl. at 40-48.)

On October 17, 2008, FSP filed a Counterclaim against Plaintiffs, alleging Plaintiffs mischaracterized the Partnership Agreement, thereby frustrating FSP's ability to manage the partnerships. (Countercl. (Doc. #12) ¶ 24.) Further, Plaintiffs' lawsuit allegedly will deplete FSP's resources and decrease funds for other partners. (Id. ¶ 25.) FSP brings claims for breach of the implied covenant of good faith and fair dealing (count 1), tortious breach of the implied covenant of good faith and fair dealing (count 2), breach

of fiduciary duty (count 3), tortious interference with business relationships (count 4), and tortious interference with prospective economic advantage (count 5). (Id. at 7-12.)

The Individual Defendants now move to dismiss the Complaint against them for lack of personal jurisdiction, and Plaintiffs move to dismiss the Counterclaim for failure to state a claim.

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The Individual Defendants argue the fiduciary shield doctrine prohibits the exercise of personal jurisdiction over them, and the Court can establish neither general nor specific jurisdiction. Plaintiffs file supporting documents in opposition and, alternatively, request the Court take judicial notice of the documents. Should the Court conclude the opposition is insufficient to establish personal jurisdiction, Plaintiffs request leave to conduct jurisdictional discovery.

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating jurisdiction is proper. Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008). If the Court decides the motion without an evidentiary hearing, "the plaintiff need only make a prima facie showing of the jurisdictional facts." Id. (quotation omitted). Uncontroverted allegations in the complaint must be taken as true, and the Court resolves disputed facts in favor of the plaintiff. Menken v. Emm, 503 F.3d 1050, 1056 (9th Cir. 2007). Nonetheless, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007).

### A. Notice of Filing Documents/Request for Judicial Notice

In support of their opposition, Plaintiffs present documents filed with the Nevada Secretary of State regarding FWI and FSP, arguing judicial notice is not required because the records are self-authenticating. Alternatively, Plaintiffs request the Court judicially

5

notice the documents.

The Individual Defendants respond that Plaintiffs are seeking judicial notice for evidence of minimum contacts, not for the existence of these documents. The Individual Defendants also argue the request for judicial notice was filed late and should be denied.

Plaintiffs reply that the Court should look beyond the Complaint and accept the Individual Defendants' statements in the documents as true. They also contend the act of filing shows Nevada contacts. Plaintiffs argue their judicial notice request is timely because their opposition noted Defendants were required to register their addresses, Plaintiffs had to wait for certified copies, and the Individual Defendants were on notice jurisdictional discovery might be required.

Although the Court may take judicial notice of public records, the Court may not take judicial notice of a fact "'subject to reasonable dispute.'" Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (quoting Fed. R. Evid. 201(b)). A fact not subject to reasonable dispute is one "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). When a court takes judicial notice of a public record, "it may do so not for the truth of the facts recited therein, but for the existence of the [record], which is not subject to reasonable dispute over its authenticity." Lee, 250 F.3d at 690 (quotation omitted).

Here, the documents presented by Plaintiffs are capable of accurate and ready determination from the Nevada Secretary of State. Thus, the Court will consider the documents' contents and their filings. However, Plaintiffs are using the documents to show the Individual Defendants' "residence or business" addresses are located in Nevada. Although the Court cannot take judicial notice of the truth of those addresses, the Court may consider the documents as supporting evidence of the addresses.

As for timing, Plaintiffs filed the First Notice/Request for Judicial Notice four

days after filing their opposition and the Second Notice three days later, presumably after Plaintiffs received the certified documents. Although the filings were late, Defendants do not claim they were prejudiced and still filed their reply on time. As such, the Court will not strike Plaintiffs' documents on this basis. Accordingly, the Court will consider the documents in Plaintiffs' First and Second Notices of Filing.

### B. Personal Jurisdiction

When no federal statute governs personal jurisdiction, the Court applies the law of the forum state. Boschetto, 539 F.3d at 1015. Under Nevada's long-arm statute, the Court's jurisdiction is as broad as authorized by due process under the United States Constitution. Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court, 134 P.3d 710, 712 (Nev. 2006). Due process requires that a defendant have "minimum contacts" with the forum state, "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Although the Court may exercise personal jurisdiction over a nonresident defendant by either general or specific jurisdiction, Boschetto, 539 F.3d at 1016, the parties agree only specific jurisdiction is possible here.

The Court applies a three-prong test to determine whether to exercise specific jurisdiction over a nonresident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Id. (quotation omitted). The plaintiff bears the burden to establish prongs one and two. Id. If the plaintiff does so, the defendant must present a "compelling case" that the Court's

7

exercise of jurisdiction is unreasonable. Id.

### 1. Fiduciary Shield Doctrine

As an initial matter, the parties dispute whether the fiduciary shield doctrine prohibits the Court from exercising jurisdiction over the Individual Defendants. The Individual Defendants contend that because they are Arizona residents and their only Nevada contacts were as managers and officers of FSP and FWI, the fiduciary shield doctrine shields them from personal jurisdiction in Nevada. Plaintiffs argue the United States Court of Appeals for the Ninth Circuit rejected the fiduciary shield doctrine and, even if it applies, jurisdiction is appropriate because the Individual Defendants were the central, guiding figures behind the formation, operation, and misconduct of FWI and FSP.

"Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." Davis v. Metro Prods., Inc., 885 F.2d 515, 520 (9th Cir. 1989). The Nevada Supreme Court has not determined the status of the fiduciary shield doctrine in Nevada, and other courts disagree as to the extent of its application. See, e.g., M2 Software Inc. v. M2 Commc'ns, L.L.C., 149 F. App'x 612, 615 (9th Cir. 2005) (holding doctrine protected corporate officer); Wolf Designs, Inc. v. DHR Co., 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) (stating corporate form may be ignored where corporation is agent or alter ego of the individual defendant or where individual controlled or directly participated in the alleged activities); Brink v. First Credit Res., 57 F. Supp. 2d 848, 859 (D. Ariz. 1999) ("If the state's long-arm statute allows jurisdiction to the extent allowed by the Constitution, then employing the fiduciary shield to insulate employees is inconsistent with the wide reach of the statute.").

Nevertheless, precedent from the United States Supreme Court and the Ninth Circuit establishes that any application of the fiduciary shield doctrine is limited. Specifically, although the Court cannot acquire personal jurisdiction over employees based

on their employers' forum activities, "'their status as employees does not somehow insulate them from jurisdiction.'" Davis, 885 F.2d at 521 (quoting Calder v. Jones, 465 U.S. 783, 790 (1984)); see also Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984) (rejecting "the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity"). Rather, the Court must assess each defendant's contacts individually. Davis, 885 F.2d at 521; see also Hoag v. Sweetwater Int'l, 857 F. Supp. 1420, 1426 (D. Nev. 1994) ("Jurisdiction over an individual director or officer of a corporation may not be predicated on the court's jurisdiction over the corporation itself, unless the individual maintains contacts with the forum state that would subject him to the coverage of the state's long arm statute and comport with due process.") Accordingly, the Court must assess each of the Individual Defendants' contacts with Nevada to determine whether jurisdiction comports with due process.

### 2. Purposeful Availment

The Individual Defendants argue Plaintiffs fail to plead any contacts in which the Individual Defendants, other than as representatives of FSP and FWI, have purposefully availed themselves of Nevada. Plaintiffs respond that the Individual Defendants use a Nevada address as their "residence or business" on Nevada Secretary of State documents, set up FSP, FWI, and the partnerships in Nevada, and are using the benefits of Nevada law with their counterclaim. Plaintiffs also note the Partnership Agreement provides that the sole venue to enforce the original and amended agreement is Nevada.

The Individual Defendants reply that the post office box address is the same as for the FSP and FWI registered agent, is a convenient processing address, and does not establish jurisdiction. Because this is the only allegation regarding Fougnies and Day, the Individual Defendants argue they should be dismissed. As to Vercel and Widner, the Individual Defendants contend Plaintiffs focus only upon FSP's Nevada contacts.

Although Plaintiffs provide evidence that FWI and FSP are organized in Nevada and

have a Las Vegas place of business, this evidence helps establish only FSP's and FWI's Nevada contacts. (See Pls.' Second Notice of Filing (Doc. #38), Exs. A, B.) Plaintiffs also provide the Nevada Secretary of State documents that list Vercel and Widner as managers of FSP, Fougnies as a FWI director, and Day as FWI president, with their "residence or business" address as a Las Vegas post office box. (Id.) Even if true, this shows only that they were FWI and FSP officers, not that they invoked the privileges of Nevada law as individuals. Additionally, a letter mailed to Vercel and Widner at a Las Vegas address by Plaintiffs' attorney does not establish individual contacts with Nevada as it was mailed by a third party. (See Pls.' Opp'n Mot. to Dismiss (Doc. #31) ["Opp'n"], Ex. C.)

As to Vercel and Widner, Plaintiff Steven Klein ("Klein") avers (with supporting documents) that Vercel called him at, sent letters soliciting investment to, and sent the Royalty Agreement and business plans to him at his Nevada residence. (Errata to Pls.' Opp'n to Mot. to Dismiss (Doc. #32) ["Errata"] ¶¶ 3-5.) Vercel and Widner also sent solicitations to Klein in Nevada and urged him to invest funds. (Id. ¶¶ 6-8.) Further, Klein and Plaintiff Donavon Johnson ("Johnson") attended the Las Vegas meeting, which Vercel and Widner arranged, attended, and conducted. (Id. ¶ 9; Opp'n, Ex. J ¶ 10-12.) Klein and Johnson state that Vercel, Widner, and the FSP attorney recommended voting for the amendments and refused to disclose relevant information, including the terms of the settlement and licensing agreements. (Errata ¶ 9; Opp'n, Ex. J ¶ 10.) Johnson also avers that Vercel and Widner "tacitly approved" the intimidating tactics the FSP attorney used against Johnson of threatening to have a bouncer throw him out of the meeting if he continued to ask questions. (Opp'n, Ex. J ¶ 11.) Following the meeting, Vercel and Widner sent notices and a royalty check to Klein in Nevada. (Errata ¶¶ 10-11.)

With these actions, Vercel and Widner affirmatively have promoted business within Nevada. Although much of this action was on behalf of FSP, Plaintiffs provide evidence that Vercel and Widner were not simply uninvolved corporate officers because they

personally controlled and participated in the alleged wrongful activity of withholding information from the Investor Partners.

Plaintiffs further argue Fougnies and Day "controlled" the actions of Vercel and Widner, although they do not provide supporting evidence. At oral argument, Plaintiffs contended all four Individual Defendants personally were involved in the actions of FWI and FSP for their own self-interest. For instance, Plaintiffs argued the Individual Defendants profited from the Patent 067 litigation because they removed large sums of money from the companies without paying anything to the Investor Partners. If such allegations are true, they could constitute additional Nevada contracts for Vercel and Widner and also could establish purposeful availment as to Fougnies and Day. Because Plaintiffs have not yet had the opportunity to obtain discovery on these issues, the Court will consider whether to grant jurisdictional discovery.

### C. Motion for Jurisdictional Discovery

Plaintiffs request leave to conduct jurisdictional discovery. Specifically, they request leave to depose the four Individual Defendants on issues included in Exhibit A to their opposition, such as Defendants' Nevada business activities and communications. They also request the production of documents in Exhibit B, such as those regarding FSP and FWI's formation; compensation agreements between the Individual Defendants, FSP, and FWI; and records of Nevada investors, travel, and litigation. The Individual Defendants respond that only legal issues are in dispute and Plaintiffs fail to explain why discovery would assist the Court.

The Court has broad discretion in deciding whether to grant jurisdictional discovery. Laub v. U.S. Dep't of Interior, 342 F.3d 1080, 1093 (9th Cir. 2003). Although the Court may refuse to grant discovery if it is clear that discovery will not demonstrate facts sufficient to establish jurisdiction, the Court should grant discovery when the jurisdictional facts are contested or more facts are needed. Id.

Here, jurisdictional discovery would be helpful to elaborate on the contacts the Individual Defendants had with Nevada and to determine if Plaintiffs could establish purposeful availment. However, Plaintiffs' proposed jurisdictional discovery will parallel the discovery required for the merits of the case. For instance, Plaintiffs argue they will depose the four Individual Defendants for jurisdictional issues and for the merits of the case, even if they are not parties. Although jurisdictional issues might increase the scope of discovery to some extent, granting jurisdictional discovery separate from general discovery would be inefficient. The Court therefore orders the parties to consider jurisdictional issues in the regular course of discovery.

### III. MOTION TO DISMISS COUNTERCLAIM

Plaintiffs move to dismiss the Counterclaim, arguing it fails to state a claim, Plaintiffs have an absolute privilege to seek judicial recourse, and the Counterclaim infringes on their First Amendment rights. FSP opposes this motion and, alternatively, requests leave to amend.

When ruling on a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true." Siaperas v. Mont. State Comp. Ins. Fund, 480 F.3d 1001, 1003 (9th Cir. 2007) (quotation omitted). Although a plaintiff's factual allegations need not be detailed, a plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). Dismissal is proper only if no cognizable legal theory exists or the plaintiff has alleged insufficient facts to support a cognizable legal theory. Siaperas, 480 F.3d at 1003. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Hydrick v. Hunter, 500 F.3d 978, 985 (9th Cir. 2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

///

### A. Sufficiency of the Pleadings

Plaintiffs argue that the Counterclaim lacks allegations of facts and the claims' elements. They also argue the allegation that Plaintiffs contravened the Partnership Agreement by seeking judicial recourse is unreasonable as the agreement anticipates disputes by including choice of law and forum provisions. FSP responds that it complied with notice pleading requirements and Plaintiffs are aware of the grounds upon which FSP's claims rest because the Partnership Agreement requires FSP to pay expenses before royalties and this suit would deprive FSP and other partners of money.

#### 1. Implied Covenant of Good Faith and Fair Dealing (count one)

Plaintiffs argue they have not undermined efforts to enforce Patent 067, which was the purpose of the partnerships. Under Nevada law, every contract or agreement contains an implied promise of good faith and fair dealing. Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 808 P.2d 919, 923 (Nev. 1991). "Where the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." Id. at 922-23. "Whether the controlling party's actions fall outside the reasonable expectations of the dependent party is determined by the various factors and special circumstances that shape these expectations." Id. at 923-24.

Here, the Counterclaim alleges FSP and Plaintiffs are parties to the Partnership Agreements. FSP also alleges Plaintiffs mischaracterized the Partnership Agreement, filed a spurious lawsuit that will deplete FSP's resources, and frustrated FSP's ability to govern the partnerships. Although all factual allegations must be construed in FSP's favor, it is difficult to imagine how filing a lawsuit to enforce the Partnership Agreement contravenes the contract's spirit. Because the parties reasonably should expect the other side to file a lawsuit to resolve conflicts, the Counterclaim lacks allegations of breach of the implied covenant of good faith and fair dealing, and the Court dismisses count one.

### 2. Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing (count two)

Plaintiffs argue FSP does not allege Plaintiffs had superior bargaining power. In Nevada, a tort action for breach of the covenant of good faith and fair dealing "arises only in rare and exceptional cases when there is a special relationship between the victim and tortfeasor." Ins. Co. of the W. v. Gibson Title Co., 134 P.3d 698, 702 (Nev. 2006) (en banc) (quotation omitted). Such special relationships are "characterized by elements of public interest, adhesion, and fiduciary responsibility" and arise when there is "a special element of reliance," such as in partnership, insurance, and franchise agreements. Id. (quotation omitted). In such situations, a need exists to "protect the weak from the insults of the stronger that is not met by ordinary contract damages." Id. (quotation omitted).

Here, FSP again alleges Plaintiffs interfered with FSP by filing the lawsuit and mischaracterizing the Partnership Agreement. Even though a partnership implies a special element of reliance, FSP fails to allege how filing a lawsuit indicates bad faith or unfair dealing on the part of Plaintiffs. Even if Plaintiffs lawsuit fails, a lawsuit to resolve conflicts among partners does not constitute a tort for breach of the implied covenant of good faith and fair dealing, and the Court therefore dismisses count two.

### 3. Breach of Fiduciary Duty (count three)

Plaintiffs argue that FSP fails to allege how the purported mischaracterization of the Partnership Agreement violated any duty of care Plaintiffs owed to the partnerships. In Nevada, a claim for breach of fiduciary duty has three elements: (1) existence of a fiduciary duty; (2) breach of the duty; and (3) the breach proximately caused the damages. Brown v. Kinross Gold U.S.A., Inc., 531 F. Supp. 2d 1234, 1245 (D. Nev. 2008). Under Nevada law, partners owe their other partners and the partnership the fiduciary duty of loyalty, which is limited to accounting to the partnership, holding partnership assets as trustee, as well as refraining from being an adverse party, acting on behalf of an adverse party, and competing

with the partnership. Nev. Rev. Stat. § 87.4336(1)-(2). Partners also owe a duty of care, which prohibits a partner from engaging in grossly negligent, reckless, or intentional conduct, or knowingly violating the law. Id. § 87.4336(3).

Here, although Plaintiffs have duties of loyalty and care to FSP, there are no allegations of a breach of those duties. Filing a lawsuit to enforce the Partnership Agreement, misconstruing the agreement, and thereby frustrating FSP's ability to govern is not a breach of the duties of loyalty and care. Thus, the Court dismisses count three.

### 4.  Interference with Business Relationships (count four)

Plaintiffs argue FSP does not specify which contract Plaintiffs interfered with, and the relevant contract cannot be the Partnership Agreement because one cannot interfere with its own contract. Intentional interference with contractual relations under Nevada law requires the plaintiff to establish five elements: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." J.J. Indus., LLC v. Bennett, 71 P.3d 1264, 1267 (Nev. 2003) (quotation omitted). However, "[i]n Nevada, a party cannot, as a matter of law, tortiously interfere with his own contract." Blanck v. Hager, 360 F. Supp. 2d 1137, 1154 (D. Nev. 2005) (citing Bartsas Realty, Inc. v. Nash, 402 P.2d 650, 651 (Nev. 1965)).

Here, Plaintiffs, as a class, are the Investor Partners of all of the partnerships and cannot tortiously interfere with their own Partnership Agreements. Further, the purpose of Plaintiffs' lawsuit is to enforce the Partnership Agreement, not to disrupt that contractual relationship. The Court therefore dismisses count four.

### 5.  Interference with Prospective Economic Advantage (count five)

Plaintiffs argue FSP fails to allege a prospective contractual relationship or harm, and Plaintiffs are privileged to bring the suit. In Nevada, this tort has five elements:

(1) a prospective contractual relationship between the plaintiff and a

15

> third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and, (5) actual harm to the plaintiff as a result of the defendant's conduct.

Consol. Generator-Nev., Inc. v. Cummins Engine Co., 971 P.2d 1251, 1255 (Nev. 1998) (per curiam) (quotation omitted).

Here, the prospective relationship FSP alleges is the relationships between FSP and the other partners, from which they will benefit from the ongoing patent-enforcement litigation. (Countercl. ¶ 58.) FSP's relationships with the other partners are current relationships, not prospective ones. Further, FSP does not allege that Plaintiffs intended to prevent the relationships. Indeed, they seem to be enforcing it. Even though, as FSP alleges, FSP will be forced to pay more costs before royalties are paid out, Plaintiffs are justified in bringing a suit to enforce their rights under the Partnership Agreement. The Court therefore dismisses count five.

### B. Leave to Amend

FSP requests leave to amend, arguing it has learned of additional facts. Plaintiffs respond that amendment is futile because FSP does not suggest any factual basis for its Counterclaim and FSP failed to comply with Local Rule 15-1 by failing to attach a proposed amended complaint.

After a responsive pleading has been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." Ditto v. McCurdy, 510 F.3d 1070, 1079 (9th Cir. 2007) (quotation omitted).

FSP fails to provide the additional facts that would support its Counterclaim. Although FSP alluded to additional facts in oral argument, it did not specify those facts that

establish the elements of its causes of action, making leave to amend at this point futile. The Court therefore will deny FSP's motion to amend without prejudice to renew if and when FSP can allege sufficient facts to support cognizable legal theories.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants Jovan Vercel, Kenneth Widner, Douglas Fougnies, and Larry Day's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. #10) is hereby DENIED without prejudice to renew after sufficient discovery has been conducted to inform the Court whether a basis to challenge personal jurisdiction exists.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Conduct Jurisdictional Discovery (Doc. #33) is hereby GRANTED to be conducted in conjunction with general discovery.

IT IS FURTHER ORDERED that Plaintiffs/Counter-Defendants' Motion to Dismiss Counterclaim (Doc. #36) is hereby GRANTED.

IT IS FURTHER ORDERED that Freedom Strategic Partners' Motion for Leave to Amend the Counterclaim is hereby DENIED without prejudice.

IT IS FURTHER ORDERED that the Individual Defendants shall file their Answers to Plaintiffs' Complaint within 21 days of the date of this Order.

DATED: February 2, 2009

PHILIP M. PRO
United States District Judge