1
2
3
4

**UNITED STATES DISTRICT COURT**

5

**DISTRICT OF NEVADA**

6

7    STEVEN KLEIN, et al.,                              )
                                                        )
8                              Plaintiffs,              )      Case No. 2:08-cv-01369-PMP-PAL
                                                        )
9    vs.                                                )      **ORDER**
                                                        )
10   FREEDOM STRATEGIC PARTNERS, LLC, et al.,)                 (M/Compel - Dkt. #114)
                                                        )
11                             Defendants.              )
     _____)
12

13          The court conducted a hearing on Defendants' Motion to Compel Re Request for Production

14   No. 12 (Dkt. #114) on June 2, 2009.  Andrew Friedman and Francis Balint appeared on behalf of the

15   plaintiffs, and Bethany Hengsbach appeared on behalf of the defendants.  The court has considered the

16   motion, Statement of Counsel in Support (Dkt. #115), Declaration of Bethany Hengsbach (Dkt. #116),

17   plaintiff's Opposition (Dkt. #124), defendants' Reply (Dkt. #131), and Declaration of Anthony

18   Moshirnia (Dkt. #132), as well as the arguments of counsel at the time of the hearing.

19                                          **BACKGROUND**

20          Defendants seek to compel plaintiffs to respond to Request for Production of Documents No. 12

21   which requests that the plaintiffs produce all of their federal and state tax returns from 1998 to the

22   present.  Plaintiffs objected to this request on the grounds the tax returns are not relevant or reasonably

23   calculated to lead to the discovery of admissible evidence, overbroad, and invasive of the plaintiffs'

24   privacy rights.  Plaintiffs also objected on the grounds production of tax returns violates Nevada's

25   public policy by forcing unnecessary public disclosure, citing Schlatter v. Eighth Judicial District Court,

26   93 Nev. 189, 190 (1997).

27          Defendants assert that the tax returns are not privileged and are subject to disclosure in

28   discovery under Nevada law and that Nevada law does not recognize an evidentiary privilege for tax

returns.  Defendants assert the tax returns are highly relevant because plaintiffs claim that the royalty payments in dispute in this case should have been calculated on a net as opposed to a gross basis, and plaintiffs' understanding of the term "pre-tax income" will "tend to illuminate Plaintiffs' true understandings of the Royalty Agreement between FSP and FWI when Plaintiffs made their contributions."  Additionally, plaintiffs' tax returns may demonstrate their familiarity with the concepts "net," "gross," and "pre-tax" concerning investments unrelated to this case.  Defendants believe that plaintiffs' personal tax returns will "provide the complete picture of Plaintiffs' previous investments and their level of sophistication vis-a-vis accounting concepts that are at the core of this litigation."  Defendants assert plaintiffs' tax returns will enable them to test the veracity of plaintiffs' deposition testimony concerning their understanding of the terms "net," "gross," and "pre-tax."

Defendants claim they have a compelling need for plaintiffs' tax returns because plaintiffs have refused to produce documents regarding their investment history, and some plaintiffs have discarded or lost complete records of their investment history.  Finally, defendants argue that plaintiffs' privacy concerns are adequately addressed by the court's protective order governing confidentiality of documents.

Plaintiffs oppose the motion, arguing their personal tax returns are protected from discovery and that state and federal courts have recognized a strong public policy favoring protection of tax returns. State and federal courts have consistently acknowledged the confidential nature of tax returns and provided additional protection against unfettered discovery of tax returns.  Plaintiffs assert that Nevada law is consistent with this approach.  Although Nevada law does not recognize a privilege with respect to tax returns, the Nevada Supreme Court has recognized limitations on the discovery of information contained in tax returns to avoid an invasion into a litigant's private affairs were not relevant to the claims asserted.  Counsel for plaintiffs contends that because no plaintiff participated in the negotiation, drafting, or wording of the Royalty Agreement and none of the plaintiffs even saw the Royalty Agreement before it was distributed to them in the fall of 2007, the tax returns cannot possibly shed any light on plaintiffs' understandings of the Royalty Agreement.

Plaintiffs also argue that because this is a breach of fiduciary duty and breach of contract action against the defendants, the plaintiffs' degree of sophistication is not a defense and not in issue.

1    Plaintiffs' claims are based on defendants' fiduciary duty of full disclosure owed to all of the plaintiff

2    general partners.  The fact that some of the plaintiffs may have made various investments over the years

3    which may be reflected in their tax returns does not alter the defendants' duties at issue in this case or

4    make their tax returns discoverable.

5         Plaintiffs argue that the defendants have not established a compelling need for plaintiffs'

6    personal tax returns.  The plaintiffs submitted to seven-hour depositions in which they were examined

7    at length about their investment experience and questioned about the manner in which any profits from

8    such investments were determined in each particular case.  The fact that one of the plaintiffs discarded

9    documents relating to an investment he made more than a decade ago and another plaintiff testified his

10   computer hard drive crashed do not constitute compelling circumstances requiring the production of

11   their tax returns.  Finally, plaintiffs acknowledge that the protective order in place in this case provides

12   some protection to the plaintiffs but argue "it is not a substitute for the required showing of relevance

13   and need."

14        Defendants' reply raised an additional argument supporting production of the tax returns for the

15   first time.  Defendants' reply argues that the tax returns are discoverable under the parol evidence rule

16   as evidence of the plaintiffs' intent when they entered into the partnership agreement.  Because

17   plaintiffs' opposition concedes that the partnership agreement may be ambiguous and the court may

18   determine the contracts at issue in this case are ambiguous, parol evidence may be admissible to

19   determine the true intent of the parties.  Additionally, defendants believe that plaintiffs' tax returns may

20   reasonably lead to evidence that defendants can use to impeach the plaintiffs' testimony concerning

21   their understanding of the terms "net," "gross," and "pre-tax."

22                                          **DISCUSSION**

23        Fed. R. Civ. P. 26(b) was amended in 2000 and permits discovery into "any matter, not

24   privileged, that is relevant to the claim or defense of any party."  The stated purpose of the amendment

25   was not only to narrow the scope of discovery, but also to address the rising costs and delay of

26   discovery.  See Graham v. Casey's General Stores, 206 F.R.D. 251, 253 (S.D. Ind. 2002); Advisory

27   Committee Notes to 2000 Amendments to Fed. R. Civ. P. 26.  A number of courts and commentators

28   have addressed the scope of discovery since the 2000 Amendments to Rule 26(b).  There seems to be a

3

general consensus that the Amendments to Rule 26(b) "do not dramatically alter the scope of discovery." World Wrestling Fed'n Entm't, Inc., v. William Morris Agency, Inc., 204 F.R.D. 263, 365 n.1 (S.D.N.Y. 2001).  Most courts which have addressed the issue find that the Amendments to Rule 26 still contemplate liberal discovery, and that relevancy under Rule 26 is extremely broad.  See, e.g., Saket v. American Airlines, Inc., 2003 WL 685385, at *2 (N.D. Ill. Feb. 28, 2003); Richmond v. UPS Service Parts Logistics, 2002 WL 745588, at *2 (S.D. Ind. Apr. 25, 2002).  See also Johnson v. Mundy Indus. Contractors, Inc., 2002 WL 31464984, at *3 (E.D.N.C. Mar. 15, 2002) (stating that the 2000 Amendments to Rule 26(b)(1) are "basically a semantic change unlikely to have much salutary effect on the conduct of discovery . . . .").

However, a number of courts have concluded that the 2000 Amendments to Rule 26(b)(1) "mandate greater scrutiny" of discovery requests.  Surles v. Air France, 2001 WL 1142231, at *1 n.3 (S.D.N.Y. Sept. 27, 2001) ("it is intended that the scope of discovery be narrower than it was, in some meaningful way").  Sanyo Laser Prods. Inc. v. Arista Records, Inc., 214 F.R.D. 496, 500 (S.D. Ind. 2003) ("the scope of discovery has narrowed somewhat under the revised rule.  The change, while meaningful, is not dramatic, and broad discovery remains the norm.")  Several courts have concluded although there is no fundamental difference between the current and previous versions of Rule 26(b)(1), the difference can be ascertained by applying the principles in Rule 26(b)(2).  As the court noted in Thompson v. Dept. of Hous. and Urban Dev.,

> Lest litigants and the court become consumed with the philosophical exercise of debating the relevance between discovery relevant to the "claims and defenses" as opposed to the "subject matter" of the pending action – the jurisdictional equivalent to debating the number of angels that can dance on the head of a pin – the practical solution to implementing the new Rule changes may be to focus more on whether the requested discovery makes sense in light of the Rule 26(b)(2) factors, than to attempt to divine some bright line difference between the old and new rule.  Under this approach, when confronted with a difficult scope of discovery dispute, the parties themselves should confer, and discuss the Rule 26(b)(2) factors, in an effort to reach an acceptable compromise, or narrow the scope of their disagreement.

199 F.R.D. 168, 172 (D. Md. 2001), accord, Sanyo Laser Products, Inc., v. Arista Records, Inc., 214 F.R.D. 496, 500 (S.D. Ind. 2003).  In deciding whether to restrict discovery under Rule 26(b)(2) "the court should consider the totality of the circumstances, weighing the value of the material sought

against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." Smith v. Steinkamp, 2002 WL 1364161, at *6 (S.D. Ind. May 22, 2002), quoting, Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002) (internal quotations omitted). See also Rowlin v. Alabama Dep't. of Pub. Safety, 200 F.R.D. 459, 461 (M.D. Ala. 2001) ("courts have the duty to pare down overbroad discovery requests under Rule 26(b)(2) . . . The court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, discounted by society's interest in furthering the truthseeking function"), citing, Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033-34 (9th Cir. 1990).

The amount or type of plaintiffs' personal income is not at issue in this case. The court will, therefore exercise its discretion under Fed. R. Civ. P. 26(b)(2)(C) to limit the extent of the discovery requested. The court finds that the burden or expense of compelling discovery of more than ten years of plaintiffs' personal state and federal tax returns outweighs the likely benefit of the discovery, taking into to account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Having reviewed and considered the matter,

**IT IS ORDERED** Defendants' Motion to Compel re Request for Production No. 12 (Dkt. #114) is DENIED.

Dated this 4th day of June, 2009.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE